UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Christos Georgiou,

                    Petitioner,                08-CV-2093 (CPS)

     - against -
                                               MEMORANDUM OPINION
Robert Ercole, Superintendent, Green           AND ORDER
Haven Correctional Facility; Brian
Fischer, Commissioner, New York State
Department of Corrections; and
the Attorney General of the State of
New York,

                    Respondents.

----------------------------------------X

SIFTON, Senior Judge.

     Petitioner Christos Georgiou was convicted on March 11,

2003, of one count of murder in the second degree (felony murder)

in New York Supreme Court, Criminal Term, Queens County,[1] and is

currently incarcerated in the Greenville correctional facility in

Stormville, New York as a result of that conviction.  Petitioner

brings this petition for habeas corpus pursuant to 28 U.S.C. §

2254 alleging that he received ineffective assistance of counsel

at his trial.  For the reasons stated below, petitioner's

application is denied.

                          **BACKGROUND**

     The following facts are taken from the parties' submissions,

including the record of petitioner's state court proceedings.

     On May 29, 1995, Yorkia Gens, a seventy-five year old woman,

was robbed of her purse in Kew Gardens, Queens County.  In the

_____

        [1] Petitioner was also convicted on one count of depraved indifference
murder, but that conviction was later overturned on appeal.

course of the commission of the robbery, Ms. Gens was knocked to the ground and sustained injuries to her head. Ms. Gens died as a result of internal bleeding on June 3, 1995. The autopsy report showed that she had suffered multiple blunt injuries, fractures, and bruises, and that these injuries were not sustained from a fall from a standing position.

David Chesney was arrested for these acts on June 6, 1995. He subsequently pled guilty to robbery in the first degree, as well as to charges pending against him in another case, and received an indeterminate prison sentence from nine and two-thirds to twenty-nine years. Sometime in late 1999 or early 2000, police officers visited Mr. Chesney in prison. Mr. Chesney agreed to testify against petitioner, whom he had named as his accomplice in the crime, in exchange for a favorable letter to his parole board.

Petitioner was arrested in October of 2000 in connection with the death of Ms. Gens. At the time of petitioner's arrest, the statute of limitations on all crimes other than murder had run. Petitioner was subsequently indicted on two counts of murder in the second degree: depraved indifference murder and felony murder.

Trial by jury commenced thereafter before the Honorable Evelyn Braun of the Supreme Court, Queens County. At trial, the jury heard three different versions of the purse-snatching incident. In the first, Mr. Chesney testified that on May 29, 1995, he was driving a white Volvo that petitioner had stolen

from his neighbor, and that petitioner was sitting in the
passenger side. Trial Transcript ("Tr.") at 1375-77. Mr.
Chesney stated that he and petitioner needed money to buy drugs.
*Id.* at 1381. When Mr. Chesney and petitioner saw Ms. Gens, Mr.
Chesney stopped the car, and petitioner got out of the car and
grabbed Ms. Gens' purse. *Id.* at 1376-79. Mr. Chesney testified
that Ms. Gens held on to her purse tightly, but that petitioner
continued to yank it until the strap broke, and Ms. Gens fell to
the ground. *Id.* at 1380-81. Petitioner then allegedly took the
purse, ran back to the car, and told Mr. Chesney, "Get out of
here." *Id.* at 1381. Mr. Chesney drove away leaving Ms. Gens
lying in the street. *Id.*

Michael Olmeda offered testimony corroborating Mr. Chesney's
account of events. Mr. Olmeda was arrested in early June of 1995
for an unrelated purse snatching and agreed to plead guilty to
third-degree robbery in satisfaction of all charges against him
in exchange for testimony against petitioner. Mr. Olmeda
testified that when he was arrested in June of 1995, he was
brought to the 109th Precinct, where he saw petitioner, whom he
knew. Mr. Olmeda further testified that he and petitioner had a
conversation about an "old lady." *Id.* at 1148-49. Petitioner
allegedly told Mr. Olmeda that petitioner "had done a robbery,
and he had yanked the pocketbook from the old lady. The lady
pulled back. She fell, hit her head and her head sounded like it
cracked like a coconut hitting the ground." *Id.* at 1149. Mr.
Olmeda further testified that petitioner told him that he had

committed the robbery with an individual named "Dave," and that
while petitioner was telling Mr. Olmeda about the incident,
petitioner had a smirk on his face. *Id.* at 1149-50.

Petitioner gave a different account of the incident in a
statement to the police made shortly after his arrest, according
to a police detective who testified at trial. The detective
testified that after several hours at the precinct, petitioner
gave him an oral statement about the incident, which the
detective reduced to writing. *Id.* 1230-33. The detective read
the statement back to petitioner, who said it was accurate, but
when the detective asked petitioner to sign the statement,
petitioner refused. In the statement, petitioner admitted that
he and "Dave [Chesney]" had "robbed an old white lady (small)."
He further stated: "I was driving the Volvo stolen by me. . . .
Dave got out of [the] car and tried grabbing her pocketbook, but
she wouldn't let go. So Dave punched her many times, knocking
her to the ground. Dave then kicked her, then got into the car.
I drove off. . . . At no time I never got out of the car." *Id.*
1240-41; People's Exhibit 2A. Petitioner also told the detective
that "robbing the old lady was the only one we did" and "we were
looking for drug money." Tr. at 1228-29, 1235-36.

In addition, an emergency medical technician ("EMT")
testified at trial to a statement the victim herself made minutes
after the incident. After arriving on the scene, stabilizing Ms.
Gens by holding her neck and head to prevent further injury, and
transferring her to an ambulance, the EMT asked Ms. Gens what had

happened. *Id.* 1076-79. Ms. Gens responded that as she was walking to her car, she was assaulted by two men who took her pocketbook and keys, but that she did not remember how she got onto the ground. *Id.* 1079-83.

During the trial, the court noted that the evidence of petitioner's statement to the police detective might warrant a charge on the affirmative defense to felony murder that petitioner could not foresee Mr. Chesney's attack. *Id.* at 1008. However, defense counsel stated that despite petitioner's statement to the police detective that he had "robbed an old white lady," the defense theory was that petitioner was "clueless" and did not even know that a purse snatching was going to take place. *Id.* at 1359-60. On this theory, petitioner would not have shared Mr. Chesney's intent to rob Ms. Gens. *Id.* at 1490. Defense counsel did not request a charge on the affirmative defense to felony murder, and no such charge was given to the jury.

At the conclusion of trial, on March 11, 2003, petitioner was convicted of both depraved indifference murder and felony murder. He was sentenced to two concurrent indeterminate prison terms, from twenty years to life.

An appeal of the trial court conviction was filed with the Appellate Division of the State of New York, Second Department, and on September 8, 2003, the Appellate Division granted leave to appeal. On January 30, 2007, the Appellate Division issued a decision reversing the petitioner's conviction for depraved

indifference murder pursuant to New York State Penal Law §
125.25(2), for reasons unrelated to this petition.[2]  *People v.
Georgiou*, 38 A.D.3d 155, 158-59 (2d Dept. 2007).  In the same
ruling, however, the Appellate Division rejected petitioner's
argument that he was deprived of the effective assistance of
counsel by his counsel's failure to request that the jury be
instructed on the affirmative defense to felony murder.  *Id.* at
162.  Citing to *Strickland v. Washington*, 466 U.S. 668 (1984),
the Appellate Division concluded that "had the affirmative
defense been submitted to the jury, it would have had little or
no chance of success."  *Id.* at 160-62.  Accordingly, the
petitioner's conviction for felony murder pursuant to Section
125.25(3) of the New York State Penal Law was affirmed.  *Id.* at
161.

On February 27, 2007, the petitioner applied to the New York
Court of Appeals for a certificate granting leave to appeal.  The
New York Court of Appeals denied petitioner's application for
leave to appeal on June 6, 2007.  *People v. Georgiou*, 9 N.Y.2d
844 (Ct. App. 2007).  This petition for habeas corpus was filed

---

[2] The court reasoned that "except in rare and extraordinary
circumstances, one person's attack on another, no matter how violent or how
great the risk of harm it creates, does not rise to the level of depravity and
indifference to life contemplated by the statute defining depraved
indifference murder."  *People v. Georgiou*, 38 A.D.3d 155, 158-59 (2d Dept.
2007).  The Appellate Division noted that there was a recognized exception to
this general rule, applicable when the defendant "engages in torture or a
brutal, prolonged and ultimately fatal course of conduct against a
particularly vulnerable victim."  *Id.* at 159 n.2 (citing *People v. Suarez*, 6
N.Y.3d 202, 212 (2005)).  However, the court reasoned that even though the
victim in this case was a 75-year-old woman, she was strong enough to resist
the attack and, in any event, was not subject to "torture or a brutal,
prolonged and ultimately fatal course of conduct."  *Id.*

on May 22, 2008, less than one year after the dismissal of petitioner's application and within the time period prescribed by 28 U.S.C. § 2254.

## DISCUSSION

In his petition for habeas corpus, petitioner claims ineffective assistance of counsel in violation of his rights under the Sixth Amendment to the United States Constitution. Petitioner exhausted his claim for ineffective assistance of counsel when the New York Court of Appeals denied him leave to appeal the Appellate Division's decision on that claim on June 6, 2007. *People v. Georgiou*, 38 A.D.3d 155 (2d Dept. 2007).

Petitioner argues that he was deprived of his rights under the Sixth Amendment to the United States Constitution.[3] A petitioner who alleges a violation of his Sixth Amendment rights due to ineffective assistance of counsel must demonstrate that (1) counsel's performance was deficient by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that counsel's "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Petitioner argues that his trial counsel made a professionally unreasonable error when counsel chose not to ask for a jury instruction on the affirmative defense to felony

---

[3] The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."

murder.  The affirmative defense to felony murder is available to
an accomplice in a felony who (1) did not cause the death or in
any way solicit, request, command, importune, cause or aid in its
commission; (2) was not armed with a deadly weapon; (3) had no
reasonable ground to believe that any other participant was armed
with a deadly weapon; and (4) had no reasonable ground to believe
that any other participant intended to engage in conduct likely
to result in death or serious physical injury.  N.Y. Penal Law §
125.25(3).  Absent the affirmative defense, felony murder is a
strict liability crime:  the government need only prove that the
accused participated in a felony and that the accused's actions
during the course of the felony lead to the victim's death.  *See*
*Williams v. Mantello*, 378 F.Supp.2d 229, 238 (W.D.N.Y. 2005).

Petitioner argues that his counsel's failure to request a
charge on the affirmative defense was the result of counsel's
inexplicable and prejudicial defense strategy.  According to
petitioner, this strategy consisted of disavowing petitioner's
statement to the police detective that he had participated in the
robbery, and arguing in summation that petitioner did not share
Mr. Chesney's intent to rob.  Since petitioner had not been
charged with robbery, for which the statute of limitations had
run, and since the affirmative defense would have served as a
complete defense to the charge of felony murder, petitioner
argues that his counsel's failure to request a charge on the
affirmative defense could not have been the result of reasonable
professional judgment.

Petitioner further argues that with respect to the second *Strickland* prong, his counsel's error resulted in prejudice to him because the jury could have found him eligible for the affirmative defense had it been so charged. Acknowledging that the jury heard different accounts of what happened on the night of the incident, petitioner contends that only his version of events was borne out by the objective evidence. Petitioner testified that Mr. Chesney grabbed the purse from the victim, and that Mr. Chesney punched and kicked the victim repeatedly while doing so. Mr. Chesney, on the other hand, testified that petitioner grabbed the purse, but did not testify that he saw petitioner strike or beat the victim. The autopsy report showed that the victim's injuries were not sustained from a fall from a standing position, and the government's medical expert testified that the victim's injuries could have been caused by a foot or a hand, but not by a simple fall. Based on this evidence from trial, petitioner argues that the jury would have believed his version of events over Mr. Chesney's, and thus that they could have found him eligible for the affirmative defense to felony murder had they been allowed to consider it.

The Appellate Division agreed with petitioner in finding that his counsel's trial strategy of arguing that petitioner did not share Mr. Chesney's intent to rob was "inexplicable and offered [petitioner] no tactical or strategic advantage," noting that "the decision not to pursue the affirmative defense gave up a complete defense to no apparent benefit." *People v. Georgiou*,

38 A.D.3d 155, 159-60 (2d Dept. 2007). However, the Appellate Division also concluded that "had the affirmative defense been submitted to the jury, it would have had little or no chance of success." *Id.* at 161. The court reasoned that petitioner's testimony was not only inconsistent with Mr. Chesney's, but was also contrary to the EMT's testimony that the victim had stated she was assaulted by two men, not by one. *Id.* In addition, the Appellate Division noted that the jury had convicted the petitioner of depraved indifference murder, which reflected, at a minimum, "the jury's supportable finding beyond a reasonable doubt that [petitioner] either personally caused the victim's death or else solicited, requested, commanded, importuned, or intentionally aided Chesney to engage in the conduct that caused the victim's death."[4]  *Id.* Noting that this finding negates an essential element of the affirmative defense to felony murder,[5] the Appellate Division held that defense counsel's failure to

---

[4] Depraved indifference murder is defined as follows: "A person is guilty of murder in the second degree when: . . . [u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person[.]" New York Penal Law § 125.25(2).
    At petitioner's trial, the jury was charged that the crime of depraved indifference murder included the following elements: "1. That . . . the defendant himself or acting in concert with another person caused the death of Yorkia Gens[;] 2. That the defendant himself or acting in concert with another did so by recklessly engaging in conduct which created a grave risk of death to Yorkia Gens; [a]nd 3. That the defendant himself or acting in concert with another person engaged in such conduct under circumstances evincing a depraved indifference to human life." Tr. at 1575.

[5] The Appellate Division identified this element as follows: "namely, that the defendant '[d]id not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof.'" *People v. Georgiou*, 38 A.D.3d 155, 161 (2d Dept. 2007) (quoting New York Penal Law § 125.25(3)(a)).

request the affirmative defense to be charged did not compromise the petitioner's right to a fair trial. *Id.* at 162.

Where an issue has been decided on the merits by a state court, Section 2254 prohibits federal courts from providing relief "unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 18 U.S.C. § 2254(d).[6]

A state court decision is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Here, the Appellate Division, in finding that Petitioner failed to establish ineffective assistance, correctly cited *Strickland v. Washington*, 466 U.S. 668 (1984), the controlling Supreme Court precedent on the issue. As petitioner points out, the Appellate Division also cited the New York test for ineffective assistance, which is somewhat more favorable to defendants. *People v. Georgiou*, 38 A.D.3d at 160-61 (citing *People v. Benevento*, 91

_____

[6] The statute also provides that a court may grant a habeas petition if the state court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 18 U.S.C. § 2254(d)(2). However, Petitioner alleges no factual errors but rather disputes the legal conclusions of the state court. Accordingly, the subsection of § 2254(d) is inapplicable. See *Serrano v. Fischer*, 412 F.3d 292, 297 (2d Cir. 2005) (Where "petitioner does not challenge the state courts' factual findings . . . [but rather] challenges only the courts' conclusions of law . . . Subsection (2) of § 2254(d) is . . . inapplicable").

N.Y.2d 708, 714 (1998); *People v. Ozuna*, 7 N.Y.3d 913 (2006);
*People v. Caban*, 5 N.Y.3d 143 (2005)).  However, the Appellate
Division held that petitioner's claim failed even under the more
lenient New York standard, thus clearly implying that his claim
also failed under the more rigorous *Strickland* test.  It is
accordingly clear that the Appellate Division's decision was not
"contrary to" clearly established federal law.

"Under the 'unreasonable application' clause, a federal
habeas court may [also] grant an application if the state court
identifies the correct governing legal principle from [the
Supreme] Court's decisions but unreasonably applies that
principle to the facts of the prisoner's case." *Williams*, 529
U.S. at 413.  Under this standard, "a federal court may not issue
the writ simply because that court concludes on its independent
judgment that the relevant state-court decision applied clearly
established federal law erroneously or incorrectly." *Id*. at 411.
"Some increment of incorrectness beyond error is required."
*Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000).
"[H]owever . . . the increment need not be great; otherwise,
habeas relief would be limited to state court decisions so far
off the mark as to suggest judicial incompetence." *Id*. (internal
quotations omitted).

The question is whether the Appellate Division's application
of the *Strickland* test to the facts of petitioner's case was not
only erroneous, but unreasonable.  I conclude that it was not.
Unlike the decisions referred to in *Cox v. Donnelly*, 267

F.Supp.2d 418 (E.D.N.Y. 2003), cited by petitioner, the Appellate Division in this case explained its reasoning in considerable detail.[7] Here there is more than sufficient evidence to support the Appellate Division's conclusion that the affirmative defense, had it been submitted to the jury, would have been rejected. *See Russo v. Keane*, 42 Fed. Appx. 500 (2d Cir. 2002) (affirming denial of habeas petition based on ineffective assistance claim and holding that state court's determination that charge on affirmative defense to felony murder, assuming without deciding defendant was entitled to one, would not have been accepted by the jury was reasonable and supported by record evidence). Petitioner's testimony that Mr. Chesney snatched the victim's purse by himself was contradicted not only by Mr. Chesney's testimony, but also by Mr. Olmeda's testimony and the victim's own statement that she had been assaulted by two men. Moreover, based on the jury's conviction of the petitioner for depraved indifference murder, the Appellate Division's conclusion that the jury would not have found that petitioner neither personally

---

[7] In *Cox v. Donnelly,* this Court and the Second Circuit held that the defense attorney provided ineffective assistance in failing to object to an unconstitutional jury charge on intent. Both courts noted that the Court of Appeals summarily denied the defendant's claim of ineffective assistance without substantive analysis. *Cox v. Donnelly*, 267 F.Supp.2d 418, 420 (E.D.N.Y. 2003); *Cox v. Donnelly*, 387 F.3d 193, 197 (2d Cir. 2004). Thus, in the *Donnelly* case, the federal courts could not consider the state court's reasoning. The *Donnelly* case is further distinguishable because both this Court and the Second Circuit found that defense counsel's error clearly prejudiced the defendant. The Second Circuit explained that, because the sole significant issue in the case was whether the petitioner intended to kill the victim, and because the jurors focused on intent in their deliberations, the petitioner had established that he was prejudiced by his attorney's failure to object to the unconstitutional charge on intent. *Donnelly*, 387 F.3d at 199-200.

caused nor intentionally aided in the conduct that caused the victim's death was entirely reasonable.

**CONCLUSION**

For the reasons set forth above, petitioner's application is denied and petitioner is denied a certificate of appealability because he has not made a "substantial showing of the denial of a constitutional right." *U.S. v. Outen*, 286 F.3d 622, 634 (2d Cir. 2002) (quoting 28 U.S.C. § 2253(c)(2)). The Clerk is directed to transmit a filed copy of the within to the parties.

SO ORDERED.

Dated:     Brooklyn, NY
           January 6, 2009

                    By: <u>/s/ Charles P. Sifton (electronically signed)</u>
                        United States District Judge